Cite as 2024 Ark. App. 325

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-22-762

| | |
|---|---|
| OCNC, INC. D/B/A SILVER OAKS HEALTH AND REHABILITATION<br><br>APPELLANT<br><br>V.<br><br><br>RENEE LEWIS, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF LILLIE MAE EDWARDS, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF LILLIE MAE EDWARDS, DECEASED<br><br>APPELLEE | Opinion Delivered May 22, 2024<br><br>APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT<br>[No. 52CV-20-184]<br><br><br>HONORABLE ROBIN CARROLL, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Chief Judge**

This is an appeal from an order denying a motion to compel arbitration of a suit brought by Renee Lewis, individually and on behalf of the estate of Lillie Mae Edwards and her wrongful-death beneficiaries. Lillie Mae resided at a nursing home operated by appellant OCNC, Inc. Renee signed her admission papers and an optional three-page arbitration agreement. In almost the simplest form possible, this appeal presents a recurring issue in nursing-home litigation: could a person who signed admission papers bind the resident to arbitrate a claim resulting from the stay? OCNC supported its motion to compel arbitration with an affidavit from Vicki Vaughan, a former admissions coordinator who swore she

assisted with Lillie Mae's admission to the facility in June 2014. Vaughan did not recall the specifics of the admission, but she swore she would have done what she usually did:

> During the admission process, it was my standard practice to receive verbal authorization from a competent resident for someone who was not the resident's power of attorney to handle the admission process, and execute documents, on the resident's behalf. I would specifically ask the resident if he or she was authorizing someone else to handle the admission process, and execute documents, on their behalf. I would always receive the resident's authorization before allowing another person to handle the admission process, and execute documents, on the resident's behalf.

In a response to the motion (that is, a "paper" under Arkansas Rule of Civil Procedure 7(b), not evidence) Renee admitted signing the arbitration agreement, but stated she "did not have any authority, either actual or statutory," to execute it on Lillie Mae's behalf. The circuit court denied OCNC's motion to compel arbitration by general (blanket) denial, and OCNC filed a timely notice of appeal.

We have jurisdiction under Arkansas Rule of Appellate Procedure–Civil 2(a)(12) to hear the appeal. Our review is de novo. *Hickory Heights Health & Rehab, LLC v. Smith*, 2022 Ark. App. 190. The specific issue is whether OCNC met its burden to prove Renee's agency authority to bind Lillie Mae to the arbitration agreement.

Our analysis of agency authority in this setting often turns on whether a statute or instrument that gave an agent *some* decision-making power included the power to decide how any claims would be handled. Here, the text we're called to interpret is Vaughan's affidavit. Assuming Lillie Mae authorized Renee to "handle the admission process," as Vaughan swore (and Renee did not refute), did her authority to execute the documents necessary for Lillie Mae's admission extend to the separate, and optional arbitration agreement?

We conclude it did not.  Decisions from this court and our supreme court make clear that authority to make healthcare decisions for another person (whatever the source of that authority) does not include or imply authority to decide whether related claims will be arbitrated.  This is true for an adult acting with statutory authority to authorize a parent's medical treatment, *Courtyard Gardens Health & Rehab., LLC v. Quarles*, 2013 Ark. 228, 428 S.W.3d 437, an emergency custodian acting under the Adult Maltreatment Custody Act, *Courtyard Gardens Health & Rehab., LLC v. Sheffield*, 2016 Ark. 235, 495 S.W.3d 69, and a guardian of the person—but not the estate—of a ward.  *Sheffield*, 2016 Ark. 235, at 5–6, 495 S.W.3d at 72 (citing *Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 281 S.W.3d 721 (2008), and *GGNSC Holdings, LLC v. Lamb*, 2016 Ark. 101, 487 S.W.3d 348).  The same is true for an express delegation of that authority in a power of attorney.  *Smith*, 2022 Ark. App. 190; *Courtyard Gardens Health & Rehab., LLC v. Williamson*, 2016 Ark. App. 606, 509 S.W.3d 685; *see also Nursing & Rehab. Ctr. at Good Shepherd, LLC v. White*, 2024 Ark. App. 307, ___ S.W.3d ___.

The distinction between medical decisions and litigation decisions is also embodied in our statutory law.  Under the Uniform Power of Attorney Act, for example, authority to bind a principal to arbitration falls under "Claims and Litigation" in Ark. Code Ann. § 28-68-212(5).  *Williamson*, 2016 Ark. App. 606, at 5 n.2, 509 S.W.3d at 689 n.2.  The Act does not apply at all to "a power to make health-care decisions." Ark. Code Ann. § 28-68-103(2) (Repl. 2012).  Most state courts that have addressed the issue have held, for essentially those reasons, that authority to make healthcare decisions does not include authority to enter a separate, optional arbitration agreement.  *Harrod v. Country Oaks Partners, LLC*, 544 P.3d

3

1138, 1153 n.15 (Cal. 2024) (collecting cases). We are not persuaded that a party with the burden to prove agency can evade that distinction simply by describing the agent's role in the admissions process at a greater level of abstraction, as Vaughan's affidavit seems to do.

*Salem Place Nursing & Rehabilitation Center, Inc. v. Jefferson*, 2023 Ark. App. 237, 667 S.W.3d 543, is not to the contrary. In *Jefferson*, we held that a resident's verbal permission for her mother to "complete the admission paperwork on her behalf" bound the resident to an arbitration provision within. *Id.* at 12, 667 S.W.3d at 550. But the agreement to arbitrate in *Jefferson* was written into the nursing-home admission agreement as *an express condition of admission*. Agreeing the resident would arbitrate was not collateral to securing the resident's admission to the nursing home; it was integral and necessary, like agreeing to pay for her room.

We understand the Federal Arbitration Act requires us to put arbitration agreements "on equal footing with all other contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 248 (2017). Our decision honors that requirement: on this record, agreeing that Lillie Mae would arbitrate was just one decision (among many, potentially) Renee *did not have to make* to admit Lillie Mae to OCNC's care. Simply put, there was no valid agreement to arbitrate, so the circuit court did not clearly err when it denied OCNC's motion to compel arbitration of these claims.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Fuqua Campbell, P.A.*, by: *Eric Gribble*, *Blake Hendrix*, *Annie Depper*, *Chris Stevens*, and *Lea Phelps*, for appellant.

4

*Daniels Law Firm, PLLC*, by: *Shawn Daniels* and *William Haslam*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.